# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| **WILFRED MICHAEL STARK III,** | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) ) | Case No. 19-cv-01010 (APM) |
| **HEATHER SWIFT, et al.,** | ) ) ) | |
| Defendants. | ) ) | |

## MEMORANDUM OPINION AND ORDER

### I.

Pro se Plaintiff Wilfred Michael Stark III brings claims for conspiracy, defamation, intentional infliction of emotion distress ("IIED"), and false arrest and malicious prosecution against 22 defendants. Fifteen of those Defendants—the Republican Standard; Adam Laxalt; Robert List; Stephen Puetz; Ryan Keller; Joseph Brown; Ed Gillepsie; the Republican Governors Association; the Republican National Committee; the National Republican Congressional Committee; the National Republican Senatorial Committee; the Daily Caller; and the United States acting on behalf of Heather Swift, Amanda Kaster-Averill, and Tyler Dever—move to dismiss Plaintiff's complaint in six different motions.

For the reasons that follow, the motions to dismiss are granted.

### II.

Plaintiff is a journalist who, at the time of the events at issue in the Complaint, was employed by ShareBlue Media and later the American Ledger,[1] two progressive media organizations. Complaint, ECF No. 1-1 [hereinafter Compl.], ¶¶ 6, 13. Plaintiff was tasked with

---

[1] Plaintiff was employed by American Bridge 21st Century, a Super PAC that owns and runs American Ledger. *About Us*, AMERICAN LEDGER, https://american-ledger.com/about-us/ (last visited Oct. 31, 2019).

covering Republican politicians and conservative leaders. *Id.* ¶¶ 7, 13. In his Complaint, Plaintiff describes a series of altercations with candidates, politicians, and staffers during which Defendants allegedly made, or conspired to make, false and damaging statements against Plaintiff and, in at least one case, falsely accused him of assaulting a female staffer. *Id.* ¶¶ 8–35. These confrontations and alleged defamatory statements led to Plaintiff's arrest in two instances, and his removal from the Conservative Political Action Conference in another. *Id.* ¶¶ 12, 16, 19–20. Following these incidents, Plaintiff alleges that the National Republican Congressional Committee assigned interns to follow him around the Capitol grounds carrying signs bearing his mugshot. *Id.* ¶ 28.

On March 15, 2019, Plaintiff filed a four-count complaint in the Superior Court of the District of Columbia against 22 individual and entity defendants, alleging conspiracy (Count I), defamation (Count II), IIED (Count III), and false arrest and malicious prosecution (Count V).[2] *See generally* Compl. On April 10, 2019, Defendants Heather Swift, Amanda Kaster-Averill, and Tyler Dever—all federal employees at the relevant time—removed the suit to federal court. Notice of Removal, ECF No. 1. Shortly thereafter, fifteen of the named defendants filed six different motions to dismiss Plaintiff's Complaint. *See* Mots. to Dismiss and Am. Mots. to Dismiss, ECF Nos. 16, 17, 20, 21, 22, 24. The court now turns to these motions.

III.

Seven defendants move to dismiss the complaint for lack of personal jurisdiction in three separate motions. A plaintiff bears "the burden of establishing the court's personal jurisdiction" over a defendant. *FC Inv. Grp. LC v. IFX Markets, Ltd.*, 529 F.3d 1087, 1091 (D.C. Cir. 2008); *see also Crane v. N.Y. Zoological Soc'y*, 894 F.2d 454, 456 (D.C. Cir. 1990). To establish

---

[2] There is no Count IV listed in the Complaint.

personal jurisdiction, a plaintiff "'must allege specific acts connecting [the] defendant with the forum' and 'cannot rely on conclusory allegations.'" *Clay v. Blue Hackle N. Am., LLC*, 907 F. Supp. 2d 85, 87 (D.D.C. 2012) (quoting *Second Amendment Found. v. U.S. Conference of Mayors*, 274 F.3d 521, 524 (D.C. Cir. 2001); *Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 332 F. Supp. 2d 63, 66 (D.D.C. 2004)). A District of Columbia court may exercise general jurisdiction only over individuals who are domiciled in the District. D.C. Code § 13-422; *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014). For an individual, "[d]omicile is determined by two factors: physical presence in a state, and intent to remain there for an unspecified or indefinite period of time." *Prakash v. Am. Univ.*, 727 F.2d 1174, 1180 (D.C. Cir. 1984). A corporation is domiciled where it is incorporated and where it has its principal place of business. *Daimler AG*, 571 U.S. at 137.

"To establish personal jurisdiction over a non-resident, a court must engage in a two-part inquiry: A court must first examine whether jurisdiction is applicable under the state's long-arm statute and then determine whether a finding of jurisdiction satisfies the constitutional requirements of due process." *GTE New Media Servs. Inc. v. BellSouth Corp.*, 199 F.3d 1343, 1347 (D.C. Cir. 2000) (citing *United States v. Ferrara*, 54 F.3d 825, 828 (D.C. Cir. 1995)). As to each of the seven moving defendants, the only actions attributed to them occurred outside of the District. Accordingly, the only applicable section of the District's long-arm statute is subsection 4, which confers jurisdiction over a defendant that "caus[es] tortious injury in the District of Columbia by an act or omission outside the District of Columbia if he regularly does or solicits business, engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed, or services rendered, in the District." D.C. Code § 13-423(4). The court will assume for purposes of this motion that Plaintiff suffered a reputational injury in

the District from the alleged defamation. *See Mastro v. Potomac Elec. Power Co.*, 447 F.3d 843, 857–58 (D.C. Cir. 2006). Plaintiff has not, however, met his burden of establishing the other requirements under subsection 4. The court will separately discuss each motion below. Because the court finds that it cannot exercise specific jurisdiction over any of the seven moving defendants under the District of Columbia's long-arm statute, it need not address whether exercising jurisdiction over the defendants would satisfy the Constitution's due process requirements.

A.

Defendant Republican Standard is a Virginia-registered limited liability company that maintains its principal place of business in Richmond, Virginia. Am. Mot. to Dismiss, ECF No. 17-3, ¶¶ 1–3. It is an online news platform that publishes content about the Republican Party and its candidates by means of its website. *Id.* ¶ 4. It has only one, part-time employee, who works out of their Richmond office, as well as two co-owners, both of whom reside in Virginia. *Id.* ¶¶ 5–8. Accordingly, the Republican Standard is not domiciled in the District of Columbia, and this court cannot exercise general jurisdiction over it. *See Daimler AG*, 571 U.S. at 137.

The court also cannot exercise specific jurisdiction over the Republican Standard. Plaintiff has provided nothing in his Complaint from which the court can infer that the Republican Standard "regularly does or solicits business, engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed, or services rendered, in the District of Columbia." D.C. Code § 13-423(4). Plaintiff makes very few references to the Republican Standard in his Complaint. At the beginning and end of the Complaint, the Republican Standard is mentioned in the list of all defendants. *See* Compl. at pp. 5, 6, 17. Plaintiff also alleges that the Republican Standard and nineteen other defendants "communicated at various times and instances to marginalize, discredit and defame [Plaintiff] with the common purpose of forcing him

4

to stop holding Republicans accountable in the press." *Id.* ¶ 37. In neither instance does Plaintiff assert that the Republican Standard did any business or took part in any course of conduct in the District, even in a tangential way. *See generally* Compl. The court thus cannot exercise specific jurisdiction over the Republican Standard. Accordingly, its motion to dismiss is granted.

B.

Defendants Adam Laxalt, Robert List, Stephen Puetz, Ryan Keller, and Joseph Brown ("the Las Vegas defendants") are each non-District of Columbia residents. Brown, Laxalt, and List are residents of Nevada, Brown Affidavit, 14-2; Laxalt Affidavit, ECF No. 16-2; List Affidavit, ECF No. 16-3; Keller is a resident of Iowa, Keller Affidavit, ECF No. 15-2; and Puetz is a resident of California, Puetz Affidavit, ECF No. 16-4. The court therefore cannot exercise general jurisdiction over any of them.

Further, the only allegations levelled against the Las Vegas defendants took place in Las Vegas, Nevada. Plaintiff contends that in October 2018, he was at an event where Laxalt was scheduled to give remarks. Compl. ¶ 30. After the event, Plaintiff followed Laxalt into the hallway to question him, at which point Plaintiff alleges that Laxalt's staff "assaulted" him. *Id.* ¶ 31. Police arrived on the scene, and the Las Vegas defendants gave "false and defamatory statements to the police," at which point Plaintiff was arrested and taken to jail. *Id.* ¶ 32. Even viewing this recitation of facts in the light most favorable to Plaintiff, all of the events he describes took place in Nevada. Nowhere does he contend that the Las Vegas defendants did business in the District of Columbia, derived revenue from activities in the District, engaged in a course of conduct in the District, or had any contact whatsoever with the District. *See* D.C. Code § 13-423(4). Accordingly, the court cannot exercise specific jurisdiction over the Las Vegas defendants. Their motion to dismiss is granted.

C.

Finally, based on the facts and allegations before it, this court lacks personal jurisdiction over Ed Gillespie. *See* Mot. to Dismiss, ECF No. 20. As noted in the Complaint, Gillespie is a resident of Virginia and ran for Governor in that state. Compl. at p. 4, ¶ 7. Plaintiff alleges that he attended Gillespie campaign events and that, after unwelcome questioning by Plaintiff, the Gillespie campaign began removing him from events. *Id.* ¶¶ 8–9. In particular, Plaintiff describes an incident in Annandale, Virginia, when a Gillespie staffer called the police and reported Plaintiff as a suspicious person. *Id.* ¶¶ 10–11. According to Plaintiff, that report eventually led to his arrest. *Id.* ¶ 12. Nothing about Plaintiff's allegations suggests that Gillespie had any contact with the District in connection with these events.

Plaintiff also contends "[o]n information and belief" that Gillespie and several other defendant organizations "began discussing American Bridge's new reporting initiative and how to marginalize [Plaintiff]. These discussions also took place on a [sic] email list among conservative communications professionals." *Id.* ¶ 15. But again, plaintiff alleges nothing that could allow the court to plausibly conclude that Gillespie had a connection to, or engaged in a course of conduct with, the District of Columbia. *See* D.C. Code § 13-423(4).

IV.

The United States moves to dismiss under Rule 12(b)(1) on behalf of Heather Swift, Amanda Kaster-Averill, and Tyler Dever, arguing that the court lacks subject matter jurisdiction over any claims against them. Mot. to Dismiss, ECF No. 24 [hereinafter United States' Mot.]. Plaintiff contends that Swift, Kaster-Averill, and Dever made "wildly inaccurate, maliciously false and defamatory" statements to Capitol Police following an altercation with Plaintiff when he approached former-Secretary of the Interior Ryan Zinke at the Capitol building. Compl. ¶ 19.

6

Plaintiff also alleges that Swift requested that Plaintiff be held in jail, and during that time she coordinated with "peers on conservative email lists, issu[ed] press statements, and [spoke] with reporters" because she knew he could not defend himself from jail. Further, Swift "defamed [Plaintiff] to Brietbart News and the Daily Caller, and conspired to further defame [him] by email." *Id.* ¶¶ 20–21. At the time of these events, Swift and Kaster-Averill were employees of the Department of the Interior, and Dever worked for the United States House of Representatives. *See* Compl. ¶ 3; Certification, ECF No. 1-2; United States' Mot. at 3–4.

The United States has sought to substitute itself as the proper party for Swift, Kaster-Averill, and Dever on the ground that each was acting within her employment when she made alleged defamatory statements about Plaintiff. United States' Mot.; Reply to Pl.'s Resp. to Mot. to Dismiss, ECF No. 29.

> Upon certification by the Attorney General that [a] defendant employee was acting within the scope of his office or employment at the time of the incident out of which the claim arose, any civil action or proceeding commenced upon such a claim in a United States district court shall be deemed an action against the United States . . . , and the United States shall be substituted as the party defendant.

*Council on Am. Islamic Relations v. Ballenger*, 444 F.3d 659, 662 (D.C. Cir. 2006) (quoting 28 U.S.C. § 2679(d)(1)). In this case, the United States provided a certification from Assistant U.S. Attorney Daniel Van Horn, which states in relevant part: "Defendants Heather Swift, Amanda Kaster-Averill, and Tyler Dever were employees of the Federal Government and were acting within the scope of their employment by the U.S. Department of the Interior or the U.S. House of Representatives at the time of the incidents out of which the claim arose." Certification, ECF No. 1-2. Such certification, however, "does not conclusively establish as correct the substitution of the United States as defendant." *Id.* (quoting *Gutierrez de Martinez v.*

7

*Lamagno*, 515 U.S. 417, 434 (1995)). It constitutes *prima facie* evidence that the employee was acting within the scope of his or her employment, and the plaintiff bears the burden of "coming forward with specific facts rebutting the certification." *Id.* (quoting *Stokes v. Cross*, 327 F.3d 1210, 1214 (D.C. Cir. 2003)). That burden requires "alleging facts that, if true, would establish that the defendants were acting outside the scope of their employment." *Stokes*, 327 F.3d at 1215 (citing *Kimbro v. Velten*, 30 F.3d 1501, 1508–09 (D.C. Cir. 1994)). To answer that question, the court applies District of Columbia law. *See Ballenger*, 444 F.3d at 663.[3]

Plaintiff offers only argument, but no facts, to rebut the United States' certification. He finds it "preposterous that any one of [Swift's, Kaster-Averill's, or Dever's] duties could possibly include perjuring themselves to affect the arrest of a reporter engaged in Constitutionally protected First Amendment activities" and that he expects his attorney will "contest that certification." Reply to Defs.' Mots. to Dismiss, ECF No. 27 [hereinafter Pl.'s Opp.], at 13. Plaintiff's conclusory statements cannot rebut the United States' prima facie evidence that the defendants were acting within the scope of their employment. *See Stokes*, 327 F.3d at 1215. Accordingly, the United States is properly substituted for Swift, Kaster-Averill, and Dever as the defendant in

---

[3] District of Columbia law follows the Restatement:

> (1) Conduct of a servant is within the scope of employment if, but only if:
>    (a) it is of the kind he is employed to perform;
>    (b) it occurs substantially within the authorized time and space limits;
>    (c) it is actuated, at least in part, by a purpose to serve the master, and
>    (d) if force is intentionally used by the servant against another, the use of force is not unexpectable by the master.
> (2) Conduct of a servant is not within the scope of employment if it is different in kind from that authorized, far beyond the authorized time or space limits, or too little actuated by a purpose to serve the master.

*Ballenger*, 444 F.3d at 663 (quoting The Restatement (Second) of Agency § 228 (Am. Law Inst. 1958)); *see also Wuterich v. Murtha*, 562 F.3d 375, 383 (D.C. Cir. 2009).

8

this case.

The federal government may be sued only if it has waived sovereign immunity. *F.D.I.C. v. Meyer*, 510 U.S. 471, 475 (1994). "The Federal Tort Claims Act ("FTCA") provides a limited waiver of sovereign immunity where a plaintiff seeks monetary damages against a federal defendant for common law torts committed by federal employees." *Wilson v. Obama*, 770 F. Supp. 2d 188, 191 (D.D.C. 2011) (citing *Roum v. Bush*, 461 F. Supp. 2d 40, 46 (D.D.C. 2006)). Under the FTCA, a waiver of sovereign immunity does not occur, however, until the plaintiff has exhausted all administrative remedies by "first present[ing] the claim to the appropriate Federal agency" and obtaining a final written decision or waiting six months after presentment. 28 U.S.C. § 2675(a); *see also Wilson*, 770 F. Supp. 2d at 191–92. Plaintiff has offered nothing in his Complaint or his Opposition to suggest that he exhausted his administrative remedies, and neither the Department of the Interior nor the House of Representatives could find any evidence of an FTCA claim by Plaintiff. United States' Mot., Decl. of Jared Slade, ECF No. 24-1, Certification, ECF No. 24-2; *see generally* Compl.; Pl.'s Opp. His claim therefore fails on that ground.

Plaintiff loses on the merits, too. The FTCA's limited waiver of sovereign immunity expressly bars defamation, malicious prosecution, and false arrest claims against the United States under the intentional tort exception. 28 U.S.C. § 2680(h); *Millbrook v. United States*, 569 U.S. 50, 52–53.[4] The United States' motion to dismiss on behalf of Swift, Kaster-Averill, and Dever is therefore granted.

V.

Multiple entity defendants move to dismiss the Complaint for failure to state a claim under

---

[4] The court acknowledges that the § 2680(h) exception does not apply to investigative or law enforcement officers, defined as "any officer of the United States who is empowered by law to execute searches, to seize evidence, or to make arrests for violations of Federal law." 28 U.S.C. 2680(h). Plaintiff makes no allegation that would support treating Swift, Kaster-Averill, or Dever as an investigative or law enforcement officer.

9

Rule 12(b)(6). Mot. to Dismiss, ECF No. 20. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). At the motion to dismiss stage, the court must accept as true a plaintiff's well-pleaded factual contentions and draw all reasonable inferences, but it need not accept thread-bare recitals of the elements of standing or legal conclusions disguised as factual allegations. *See Arpaio v. Obama*, 797 F.3d 11, 19 (D.C. Cir. 2015). "[N]aked assertion[s] devoid of further factual enhancement" are insufficient to support a complaint. *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). Factual allegations are not required to be "detailed," but they must be more than "an unadorned, the defendant-unlawfully-harmed-me accusation." *Id.* (citing *Twombly*, 550 U.S. at 557). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged— but it has not shown—that the pleader is entitled to relief," and the case can be dismissed. *Id.* at 679 (cleaned up) (citing Fed. R. Civ. P. (8)(a)(2)).

A.

Plaintiff fails to name the Republican Governors Association in any of the four counts in the Complaint. *See* Compl. ¶¶ 36–58. Even construing the complaint liberally and assuming that Plaintiff intended to include the Republican Governors Association among the "Defendants" mentioned in Count III for IIED, the Association's motion must be granted.[5] Plaintiff fails to

---

[5] The other counts each specify the defendants sued, and none of those counts mentions the Republican Governors Association. So, the court presumes that Count III is the only count that applies to the Association.

allege any extreme or outrageous conduct on the part of the Republican Governors Association. *See Larijani v. Georgetown Univ.*, 791 A.2d 41, 44 (D.C. 2002). Nor does he "describe distress of a nature so acute that 'harmful physical consequences might be not unlikely to result.'" *Johnson v. Paragon Sys., Inc.*, 195 F. Supp. 3d 96, 100 (D.D.C. 2016) (quoting *Chen v. District of Columbia*, 256 F.R.D. 267, 272–73 (D.D.C. 2009)). Plaintiff does assert that he suffered "extreme emotion distress," Compl. ¶ 46, and "severe mental anguish," *id.* ¶ 47, but these allegations are entirely conclusory. When a plaintiff's "allegations of emotional distress in both the complaint and her declaration are entirely conclusory and unsupported by any specifics," they are "insufficient as a matter of law to support [the severe emotion distress] element of her IIED claim." *Askew v. Meridian Imaging Solutions, Inc.*, 601 F. Supp. 2d 173, 178 (D.D.C. 2009). The Association's motion is granted.[6]

B.

The Republican National Committee, the National Republican Congressional Committee, and the National Republican Senatorial Committee likewise move to dismiss for failure to state a claim. Mot. to Dismiss, ECF No. 21. As the court discussed above, Plaintiff's IIED claim against all "Defendants" must be dismissed. *See supra* § V.A. In addition, the three Committees are named in the conspiracy count (Count I). The conspiracy count is entirely conclusory. Under District of Columbia law, a civil conspiracy claim requires facts sufficient to plausibly conclude that (1) there was "an agreement between two or more persons"; (2) "to participate in an unlawful act"; and (3) "an injury caused by an unlawful overt act performed by one of the parties";

---

[6] Though Count One for conspiracy does not expressly mention the Republican Governors Association, Plaintiff does allege, "[o]n information and belief, Ed Gillespie, the Republican Congressional Committee, and the National Republican Senate Committee and agents thereof began discussing American Bridge's new reporting initiative and how to marginalize Mr. Stark," including discussions on a conservative email list. Compl. ¶ 15. If this allegation is intended to give rise to a conspiracy charge against the Association, it is insufficient because of its conclusory nature. *See Iqbal*, 556 U.S. at 678; *see also infra* § V.B.

11

(4) "pursuant to, and in furtherance of, the common scheme." *Exec. Sandwich Shoppe, Inc. v. Carr Realty Corp.*, 749 A.2d 724, 738 (D.C. 2000) (citations omitted). Plaintiff alleges no facts that would allow the court to plausibly determine that the elements of a conspiracy are met. He merely asserts that there were discussions over email among the defendants regarding "how to marginalize" Plaintiff and that the defendants or their agents "communicated at various times and instances to marginalize, discredit and defame [Plaintiff] with the common purpose of forcing him to stop holding Republicans accountable in the press." Compl. ¶¶ 15, 37. At no point does Plaintiff allege that any sort of conspiratorial agreement was ever reached, nor does he point to specific acts taken as a result of such an agreement.

In addition, the Complaint fails to specify any individual defendants acting on behalf of the entity defendants, making it impossible for Plaintiff to point to any "agreement" entered into by the committees, or any "overt act" performed on their behalf. Plaintiff's claim of conspiracy is far from plausible as to the Committees. Their motions are granted.

C.

Lastly, the Daily Caller moves to dismiss Plaintiff's Complaint under Rule 12(b)(6). Mot. to Dismiss, ECF No. 22. Plaintiff names the Daily Caller in Count I for conspiracy. As the court previously found, Plaintiff's allegations of a conspiracy are entirely conclusory and thus fail to state a claim upon which relief can be granted. *See supra* § V.B. Aside from mentioning that "[t]he Daily Caller was the first to publish Ms. Swift's false allegations," Compl. ¶ 22, Plaintiff has failed to identify any actions taken by individuals at the Caller or any specific false statements published by the paper, making its participation in a conspiracy implausible. *See generally* Compl. ¶¶ 36–58.

Count III for IIED mentions only "Defendants." Regardless of whether the Daily Caller

is included in Count III, Plaintiff's IIED claim fails as a matter of law. *See supra* § V.A. Plaintiff does not name the Daily Caller in Counts II or V for defamation or false arrest and malicious prosecution, respectively. Accordingly, the court grants the Daily Caller's motion.

VI.

For the foregoing reasons, the court grants the various movants' motions to dismiss, ECF Nos. 16, 17, 20, 21, 22, 24.

Dated: November 4, 2019

Amit P. Mehta
United States District Court Judge